Adam C. Anderson (Bar No. 024314)
ANDERSON BANTA CLARKSON PLLC
48 North Macdonald
Mesa, AZ 85201
480-272-5983
adam@abclawgroup.com
Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA
# PHOENIX DIVISION

| | |
|---|---|
| CHANTEL BONET,<br><br>          Plaintiff,<br><br>v.<br><br>NATIONAL CREDIT SYSTEMS, INC.,<br><br>          Defendant. | No.<br><br>COMPLAINT & TRIAL<br>BY JURY DEMAND |

NOW COMES the plaintiff, CHANTEL BONET, by and through her attorneys, ANDERSON BANTA CLARKSON PLLC., and for her Complaint against the defendant, NATIONAL CREDIT SYSTEMS, INC., the plaintiff states as follows:

### I.   PRELIMINARY STATEMENT

1. This is an action for actual and statutory damages for violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. §1692, et seq.

## II. JURISDICTION & VENUE

2. Jurisdiction arises under the FDCPA, 15 U.S.C. §1692 et seq., and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

## III. PARTIES

4. CHANTEL BONET, (hereinafter, "Plaintiff") is an individual who was at all relevant times residing in the City of Waddell, County of Maricopa, State of Arizona.

5. The debt that Plaintiff was allegedly obligated to pay was a debt allegedly originally owed by Plaintiff to La Borgata Apartments (hereinafter, "the Debt").

6. The debt that Plaintiff allegedly owed La Borgata Apartments was for an apartment lease which was for the personal use of Plaintiff and/or used for household expenditure.

7. At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

8. NATIONAL CREDIT SYSTEMS, INC., (hereinafter, "Defendant") is a business entity engaged in the collection of debt within the State of Arizona. Defendant's principal place of business is located in the State of Georgia   Defendant is incorporated in the State of Georgia.

9. The principal purpose of Defendant's business is the collection of debts allegedly owed to third parties.

10. Defendant regularly collects, or attempts to collect, debts allegedly owed to third parties.

11. During the course of its efforts to collect debts allegedly owed to third parties, Defendant sends to alleged debtors bills, statements, and/or other correspondence via the mail and/or electronic mail and initiates contact with alleged debtors via various means of telecommunication, such as the telephone and facsimile.

12. At all relevant times, Defendant acted as a debt collector as that term is defined by 15 U.S.C. §1692a(6).

13. At all relevant times, Defendant acted through its duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

### IV. ALLEGATIONS

14. On or about May 30, June 1, and June 2, 2014, Plaintiff wrote letters to her former landlord, Retreat at West Point Multi-Family LP, owners of La Borgata Apartments to dispute a bill for $517 that was sent to her since she vacated the residence she had rented from that entity.

15. In the aforesaid correspondence, Plaintiff detailed her anger and frustration in her receipt of a bill after suffering through terrible living conditions which included harassing her visitors, being without a toilet for 3 weeks forcing her to use a Wal-Mart bathroom across the street, and finally, not performing a walk-through of her apartment with her before she left.

16. On June 13, 2014, a letter was sent to Plaintiff by Koglemeier Law Group, PLC out of Mesa, Arizona, responding to the letters.

17. The aforementioned June 13, 2014 letter stated that the communication was from a debt collector.

18. The aforementioned June 13, 2014 letter stated that it was in reference to "Debt owed from failing to leave premises in a clean manner. Our matter No. 5022-14."

19. The aforementioned June 13, 2014 letter did not state that any information obtained would be used for the purpose of collecting the Debt.

20. The aforesaid June 13, 2014 correspondence was the initial communication with Plaintiff.

21. The aforesaid June 13, 2014 state that "[t]his debt will be assumed to be valid by the debt collector, unless you dispute it or any portion thereof, within thirty (30) days of your receipt of this letter. If you notify us of any dispute, in writing, within the 30-day period mentioned above, we will provide you with verification of the debt and the name and address of the original creditor if different from the current creditor."

22. On or about June 19, 2014, Plaintiff wrote a letter to Koglemeier Collection Agency, addressed to the letter that appeared on the Koglemeier Law Group PLC letter Plaintiff previously received (Koglemeier Law Group PLC and any reference to this entity will hereinafter be referred to as "Koglemeier").

23. In Plaintiff's June 19, 2014 letter, she stated that she disputed the validity of the debt.

24. On July 1, 2014, Koglemeier sent another correspondence to Plaintiff acknowledging receipt of Plaintiff's July 19, 2014 letter.

25. Koglemeier's July 1, 2014 letter was signed by Brian Sichko.

26. Koglemeier's July 1, 2014 letter stated that it was in reference to "Debt owed from failing to leave premises in a clean manner. Our matter No. 5022-14."

27. Koglemeier's July 1, 2014 letter stated that the account had been turned over to a collection agency, and Brian Sichko stated that he forwarded Plaintiff's dispute to them.

28.    On July 8, 2014, Defendant sent a letter to Plaintiff referencing its client as "La Borgata".

29.    The July 8, 2014 letter from Defendant was the initial communication with Plaintiff from Defendant.

30.    The aforesaid July 8, 2014 letter stated that the letter was an attempt to collect a debt.

31.    The aforesaid July 8, 2014 correspondence did not contain a statement that unless Plaintiff, within thirty days after receipt of said correspondence, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector.

32.    The aforesaid July 8, 2014 correspondence stated that Defendant received Plaintiff's correspondence concerning the referenced account.  The letter went on to state that the "dispute has been investigated; however, we have yet to find sufficient evidence to validate your claim(s)."

33.    The aforesaid correspondence did not provide validation of the debt.

34.    Defendant merely stated that it investigated the claim and did not find sufficient evidence is not proper validation under 15 U.S.C. §1692g(b).

35.    On July 21, 2014, more than five (5) days from its initial communication with Plaintiff, Defendant sent another letter to Plaintiff.

36.    The aforementioned July 21, 2014 correspondence stated that the matter was in reference to La Borgata.

37.    The aforementioned July 21, 2014 correspondence stated that the reference account has been placed with this office for collections.

38.    The aforementioned July 21, 2014 correspondence stated that "National Credit Systems, Inc. has been authorized to recover this debt by way of credit bureau reporting (following this initial 30 day validation period) as well as other remedies available under the law.

39. The aforementioned July 21, 2014 correspondence stated "[u]nless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt, or any portion thereof, this office will assume the debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute this debt or any portion thereof, this office will obtain verification of the debt, or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide the name and address of the original creditor if the original creditor is different from the current creditor."

40. Defendant's statements that it will report the debt following the initial 30 day validation period had the effect of conveying to an unsophisticated consumer that 30 days after the receipt of the letter by Plaintiff, the debt would be reported to one or more credit reporting agencies and appear on Plaintiff's credit reports.

41. On or about August 7, 2014, Plaintiff spoke with a person that identified himself as Vincent Fawler, a representative of Defendant.

42. Fawler told Plaintiff that if she does not pay the entire debt by September 7, 2014, this item will be reported on her credit file.

43. Plaintiff did not pay the entire Debt prior to the expiration of the thirty day period referenced in the July 21, 2014 letter.

44. Plaintiff did not pay the entire Debt prior to September 7, 2014.

45. Upon information and belief Defendant did not report this debt to any credit reporting agency after the thirty day period referenced in the July 21, 2014 correspondence.

46. Defendant's representations, as delineated above, were unfair and unconscionable as the threat to report the Debt to the consumer reporting agencies was a hollow threat made only to intimidate Plaintiff into making payment against said debt.

47. In its attempts to collect the debt allegedly owed by Plaintiff, Defendant violated the FDCPA, 15 U.S.C. §1692, in one or more of the following ways:

   a. Used false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect an alleged debt in violation of 15 U.S.C. §1692e;

   b. Threatened to take action that cannot legally or is not intended to be taken in violation of 15 U.S.C. §1692e(5);

   c. Failed to comply with the provisions of 15 U.S.C. §1692g(a);

   d. Continued to attempt collection of the debt allegedly owed by the consumer despite having failed to mail to the consumer verification of the debt by the original creditor or the name and address of the original creditor in response to receiving a timely written notification from the consumer that the debt was disputed or notification that the consumer requests the name and address of the original creditor in violation of 15 U.S.C. §1692g(b);

   e. Was otherwise deceptive and failed to comply with the provisions of the FDCPA.

48. As a result of Defendant's violations as aforesaid, Plaintiff has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress.

### V.     JURY DEMAND

49. Plaintiff hereby demands a trial by jury on all issues so triable.

### VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff, CHANTEL BONET, by and through her attorneys, respectfully prays for Judgment to be entered in favor of Plaintiff and against Defendant as follows:

   a.     All actual compensatory damages suffered;

b. Statutory damages of $1,000.00;

c. Plaintiff's attorneys' fees and costs;

d. Any other relief deemed appropriate by this Honorable Court.

Respectfully submitted,
**CHANTEL BONET**

By: _s/ Adam Anderson_
Attorney for Plaintiff

Dated: December 3, 2014

Adam C. Anderson (Bar No. 024314)
ANDERSON BANTA CLARKSON PLLC
48 North Macdonald
Mesa, AZ 85201
Telephone:  (480) 272-5983
Facsimile:  (480) 522-3649
E-Mail:  adam@abclawgroup.com